481.    Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of Neb. Rev. St. §§ 59-801 *et seq.*, and Nebraska State Subclass members, accordingly, seek damages pursuant to Neb. Rev. St. § 59-831 and injunctive relief pursuant to Neb. Rev. St. § 59-814.

**N.    Violation of the Nevada Unfair Trade Practice Act, N.R.S. §§ 598A.010 *et seq.***

482.    As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of the Nevada Unfair Trade Practice Act, N.R.S. §§ 598A.010 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Nevada; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Nevada State Subclass members were deprived of free and open competition; (4) Nevada State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Nevada State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

483.    Defendants conspired fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents.  United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition.  Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

484.    Nevada State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

485.     Defendants' conduct is a substantial factor of the Nevada State Subclass' loss. The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy.  Nevada State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

486.     Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of the Nevada Unfair Trade Practice Act, N.R.S. §§ 598A.010 *et seq.*, and Nevada State Subclass members, accordingly, seek damages and injunctive relief pursuant to N.R.S. § 598A.210.

**O.     Violation of the New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1 *et seq.***

487.     As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of the New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout New Mexico; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) New Mexico State Subclass members were deprived of free and open competition; (4) New Mexico State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) New Mexico State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

488.     Defendants conspired fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents.  United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition.  Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                      94

1  With the ability to preclude free and unrestricted competition, Defendants increased the price of

2  Plasma-Derivative Protein Therapies.

3       489.    New Mexico State Subclass members suffered an ascertainable loss of money or

4  property from the supracompetitive, artificially inflated prices.

5       490.    Defendants' conduct is a substantial factor of the New Mexico State Subclass'

6  loss.  The loss was a direct and proximate result of Defendants' willful monopoly and price-

7  fixing conspiracy.  New Mexico State Subclass members purchased Plasma-Derivative Protein

8  Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after

9  Defendants precluded free and unrestricted competition.

10       491.    Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

11  controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of the

12  New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1 *et seq*., and New Mexico State Subclass

13  members, accordingly, seek damages and injunctive relief pursuant to N.M.S.A. § 57-1-3.

14  **P.**    **Violation of New York Law, N.Y. Gen. Bus. Law §§ 340 *et seq.***

15       492.    As set forth herein, Defendants created, operated, aided, or abetted a trust,

16  combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or

17  maintaining prices in violation of N.Y. Gen. Bus. Law §§ 340 *et seq.*  Defendants' unlawful

18  conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price

19  competition and output were restrained, suppressed, and eliminated throughout New York; (2)

20  the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at

21  artificially high levels throughout New York; (3) New York State Subclass members were

22  deprived of free and open competition; (4) New York State Subclass members relied on

23  Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a

24  product of a free and fair market; and (5) New York State Subclass members paid

25  supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

26       493.    Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies.

27  Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and

28  conversations in secret, confined the plan to a small group of high-level officials, and avoided

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                               95

1  the creation of documents. United by their common interests, Defendants colluded to

2  substantially limit, lessen, and exclude competition. Defendants reduced the production of

3  Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

4  With the ability to preclude free and unrestricted competition, Defendants increased the price of

5  Plasma-Derivative Protein Therapies.

6      494.  New York State Subclass members suffered an ascertainable loss of money or

7  property from the supracompetitive, artificially inflated prices.

8      495.  Defendants' conduct is a substantial factor of the New York State Subclass' loss.

9  The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing

10  conspiracy. New York State Subclass members purchased Plasma-Derivative Protein Therapies

11  at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants

12  precluded free and unrestricted competition.

13      496.  Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

14  controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of N.Y.

15  Gen. Bus. Law §§ 340 *et seq.*, and New York State Subclass members, accordingly, seek

16  damages and injunctive relief pursuant to N.Y. Gen. Bus. Law § 340.

17  **Q.  Violation of North Carolina Law, N.C.G.S.A. §§ 75-1 *et seq.***

18      497.  As set forth herein, Defendants created, operated, aided, or abetted a trust,

19  combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or

20  maintaining prices in violation of N.C.G.S.A. §§ 75-1 *et seq*. Defendants' unlawful conduct had

21  the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output

22  were restrained, suppressed, and eliminated throughout North Carolina; (2) the price of

23  Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially

24  high levels throughout North Carolina; (3) North Carolina State Subclass members were

25  deprived of free and open competition; (4) North Carolina State Subclass members relied on

26  Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a

27  product of a free and fair market; and (5) North Carolina State Subclass members paid

28  supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

498.    Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents.  United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition.  Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

499.    North Carolina State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

500.    Defendants' conduct is a substantial factor of the North Carolina State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy.  North Carolina State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

501.    Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of N.C.G.S.A. §§ 75-1 *et seq.*, and North Carolina State Subclass members, accordingly, seek damages pursuant to N.C.G.S.A. § 75-16 and injunctive relief pursuant to N.C.G.S.A. § 75-14.

**R.    Violation of North Dakota Law, NDCC §§ 51-08.1-01 *et seq.***

502.    As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of NDCC § 51-08.1- 01 *et seq.*  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout North Dakota; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) North Dakota State Subclass members were deprived of free and open competition; (4) North Dakota State Subclass members relied on Defendants'

false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) North Dakota State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

503. Defendants conspired fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents. United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition. Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

504. North Dakota State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

505. Defendants' conduct is a substantial factor of the North Dakota State Subclass' loss. The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy. North Dakota State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

506. Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of NDCC §§ 51-08.1-01 *et seq.*, and North Dakota State Subclass members, accordingly, seek damages and injunctive relief pursuant to NDCC § 51-08.1-08.

**S.** **Violation of Oregon Law, O.R.S. §§ 646.705 *et seq.***

507. As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of O.R.S. §§ 646.705 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Oregon; (2) the price of

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

1  Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially

2  high levels throughout Oregon; (3) Oregon State Subclass members were deprived of free and

3  open competition; (4) Oregon State Subclass members relied on Defendants' false

4  representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

5  fair market; and (5) Oregon State Subclass members paid supracompetitive, artificially inflated

6  prices for Plasma-Derivative Protein Therapies.

7       508.   Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies.

8  Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and

9  conversations in secret, confined the plan to a small group of high-level officials, and avoided

10  the creation of documents.  United by their common interests, Defendants colluded to

11  substantially limit, lessen, and exclude competition.  Defendants reduced the production of

12  Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

13  With the ability to preclude free and unrestricted competition, Defendants increased the price of

14  Plasma-Derivative Protein Therapies.

15       509.   Oregon State Subclass members suffered an ascertainable loss of money or

16  property from the supracompetitive, artificially inflated prices.

17       510.   Defendants' conduct is a substantial factor of the Oregon State Subclass' loss.

18  The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing

19  conspiracy.  Oregon State Subclass members purchased Plasma-Derivative Protein Therapies at

20  supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants

21  precluded free and unrestricted competition.

22       511.   Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

23  controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of O.R.S.

24  §§ 646.705 *et seq.*, and Oregon State Subclass members, accordingly, seek damages and

25  injunctive relief pursuant to O.R.S. § 646.780.

26

27

28  //

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**

99

**T.**    **Violation of South Dakota Law, SDCL §§ 37-1-3.1 *et seq.***

512.   As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of SDCL §§ 37-1-3.1 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout South Dakota; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) South Dakota State Subclass members were deprived of free and open competition; (4) South Dakota State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) South Dakota State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

513.   Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents. United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition. Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

514.   South Dakota State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

515.   Defendants' conduct is a substantial factor of the South Dakota State Subclass' loss. The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy. South Dakota State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

516.    Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of SDCL §§ 37-1-3.1 *et seq.*, and South Dakota State Subclass members, accordingly, seek damages and injunctive relief pursuant to SDCL § 37-1-14.3.

**U.    Violation of the Utah Antitrust Act, U.C.A. §§ 76-10-911 *et seq.***

517.    As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of the Utah Antitrust Act, U.C.A. §§ 76-10-911 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Utah; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Utah State Subclass members were deprived of free and open competition; (4) Utah State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Utah State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

518.    Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents.  United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition.  Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

519.    Utah State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

520. Defendants conduct is a substantial factor of the Utah State Subclass' loss. The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy. Utah State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

521. Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of the Utah Antitrust Act, U.C.A. §§ 76-10-911 *et seq.*, and Utah State Subclass members, accordingly, seek damages and injunctive relief pursuant to U.C.A. § 76-10-919.

## V.     Violation of Vermont Law, 9 V.S.A. §§ 2451 *et seq.*

522. As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of 9 V.S.A. §§ 2451 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Vermont; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Vermont State Subclass members were deprived of free and open competition; (4) Vermont State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Vermont State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

523. Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents. United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition. Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                                 102

1   With the ability to preclude free and unrestricted competition, Defendants increased the price of

2   Plasma-Derivative Protein Therapies.

3       524.   Vermont State Subclass members suffered an ascertainable loss of money or

4   property from the supracompetitive, artificially inflated prices.

5       525.   Defendants' conduct is a substantial factor of the Vermont State Subclass' loss.

6   The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing

7   conspiracy.  Vermont State Subclass members purchased Plasma-Derivative Protein Therapies

8   at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants

9   precluded free and unrestricted competition.

10       526.   Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

11   controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of 9

12   V.S.A. §§ 2451 *et seq.*, and Vermont State Subclass members, accordingly, seek damages

13   pursuant to 9 V.S.A. § 2465.

14   **W.**     **Violation of the West Virginia Antitrust Act, W. Va. Code §§ 47-18-1 *et seq.***

15       527.   As set forth herein, Defendants created, operated, aided, or abetted a trust,

16   combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or

17   maintaining prices in violation of the West Virginia Antitrust Act, W. Va. Code §§ 47-18-1 *et*

18   *seq.*  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein

19   Therapies price competition and output were restrained, suppressed, and eliminated throughout

20   West Virginia; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed,

21   maintained, and stabilized at artificially high levels throughout West Virginia; (3) West Virginia

22   State Subclass members were deprived of free and open competition; (4) West Virginia State

23   Subclass members relied on Defendants' false representation that the price of Plasma-Derivative

24   Protein Therapies was a product of a free and fair market; and (5) West Virginia State Subclass

25   members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein

26   Therapies.

27

28   //

528.   Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies. Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and conversations in secret, confined the plan to a small group of high-level officials, and avoided the creation of documents.  United by their common interests, Defendants colluded to substantially limit, lessen, and exclude competition.  Defendants reduced the production of Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce. With the ability to preclude free and unrestricted competition, Defendants increased the price of Plasma-Derivative Protein Therapies.

529.   West Virginia State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

530.   Defendants' conduct is a substantial factor of the West Virginia State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing conspiracy.  West Virginia State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants precluded free and unrestricted competition.

531.   Defendants created, operated, aided, or abetted a trust with the purpose of fixing, controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of the West Virginia Antitrust Act, W. Va. Code §§ 47-18-1 *et seq.*, and West Virginia State Subclass members, accordingly, seek damages pursuant to W. Va. Code § 47-18-9 and injunctive relief pursuant to W. Va. Code § 47-18-8.

## X.   Violation of Wisconsin Law, W.S.A. §§ 133.01 *et seq.*

532.   As set forth herein, Defendants created, operated, aided, or abetted a trust, combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or maintaining prices in violation of W.S.A. §§ 133.01 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Wisconsin; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin State Subclass members were deprived of free

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**

1    and open competition; (4) Wisconsin State Subclass members relied on Defendants' false

2    representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

3    fair market; and (5) Wisconsin State Subclass members paid supracompetitive, artificially

4    inflated prices for Plasma-Derivative Protein Therapies.

5         533.    Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies.

6    Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and

7    conversations in secret, confined the plan to a small group of high-level officials, and avoided

8    the creation of documents.  United by their common interests, Defendants colluded to

9    substantially limit, lessen, and exclude competition.  Defendants reduced the production of

10   Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

11   With the ability to preclude free and unrestricted competition, Defendants increased the price of

12   Plasma-Derivative Protein Therapies.

13        534.    Wisconsin State Subclass members suffered an ascertainable loss of money or

14   property from the supracompetitive, artificially inflated prices.

15        535.    Defendants' conduct is a substantial factor of the Wisconsin State Subclass' loss.

16   The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing

17   conspiracy.  Wisconsin State Subclass members purchased Plasma-Derivative Protein Therapies

18   at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants

19   precluded free and unrestricted competition.

20        536.    Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

21   controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of

22   W.S.A. §§ 133.01 *et seq.*, and Wisconsin State Subclass members, accordingly, seek damages

23   pursuant to W.S.A. § 133.018 and injunctive relief pursuant to W.S.A. § 133.016.

24   **Y.    Violation of Wyoming Law, W.S. §§ 40-4-101 *et seq.***

25        537.    As set forth herein, Defendants created, operated, aided, or abetted a trust,

26   combine, or monopoly of Plasma-Derivative Protein Therapies by fixing, controlling, or

27   maintaining prices in violation of W.S. §§ 40-4-101 *et seq.*  Defendants' unlawful conduct had

28   the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output

**CLASS ACTION COMPLAINT**                                                          105

1  were restrained, suppressed, and eliminated throughout Wyoming; (2) the price of

2  Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially

3  high levels throughout Wyoming; (3) Wyoming State Subclass members were deprived of free

4  and open competition; (4) Wyoming State Subclass members relied on Defendants' false

5  representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

6  fair market; and (5) Wyoming State Subclass members paid supracompetitive, artificially

7  inflated prices for Plasma-Derivative Protein Therapies.

8       538.   Defendants conspired to fix the prices of Plasma-Derivative Protein Therapies.

9  Defendants agreed not to divulge the existence of the conspiracy, conducted meetings and

10 conversations in secret, confined the plan to a small group of high-level officials, and avoided

11 the creation of documents.  United by their common interests, Defendants colluded to

12 substantially limit, lessen, and exclude competition.  Defendants reduced the production of

13 Plasma-Derivative Protein Therapies, which prevented and restrained trade and commerce.

14 With the ability to preclude free and unrestricted competition, Defendants increased the price of

15 Plasma-Derivative Protein Therapies.

16      539.   Wyoming State Subclass members suffered an ascertainable loss of money or

17 property from the supracompetitive, artificially inflated prices.

18      540.   Defendants' conduct is a substantial factor of the Wyoming State Subclass' loss.

19 The loss was a direct and proximate result of Defendants' willful monopoly and price-fixing

20 conspiracy.  Wyoming State Subclass members purchased Plasma-Derivative Protein Therapies

21 at supracompetitive, artificially inflated prices because Defendants fixed prices after Defendants

22 precluded free and unrestricted competition.

23      541.   Defendants created, operated, aided, or abetted a trust with the purpose of fixing,

24 controlling, or maintaining prices of Plasma-Derivative Protein Therapies in violation of W.S.

25 §§ 40-4-101 *et seq.*, and Wyoming State Subclass members, accordingly, seek damages and

26 injunctive relief pursuant to W.S. § 40-4-114.

27

28 //

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                                106

# THIRD CLAIM FOR RELIEF

## (VIOLATION OF STATE UNFAIR COMPETITION LAWS)

542.    Plaintiff incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

543.    Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the state unfair competition statutes listed below.

**A.**    **Violation of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101 *et seq.*

544.    As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101 *et seq.*  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Colorado; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) Colorado State Subclass members were deprived of free and open competition; (4) Colorado State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Colorado State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

545.    Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases.  Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled Colorado State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

546.     Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Colorado State Subclass members.  Colorado State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to set that price and Colorado State Subclass members had no power to negotiate.  Defendants' fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants.

547.     Colorado State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

548.     Defendants' conduct is a substantial factor of the Colorado State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.  Colorado State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

549.     Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101, *et seq.*, and Colorado State Subclass members, accordingly, seek damages pursuant to C.R.S. § 6-1-113.

**B.     Violation of District of Columbia Law, DC Code §§ 28-3901 *et seq.*

550.     As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of DC Code §§ 28-3901 *et seq.*  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout the District of Columbia; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) District of Columbia Subclass members were deprived of free and open competition; (4) District of Columbia Subclass members relied on Defendants' false representation that the price of

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

1    Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) District of

2    Columbia Subclass members paid supracompetitive, artificially inflated prices for

3    Plasma-Derivative Protein Therapies.

4          551.   Defendants knowingly and willfully engaged in deceptive and unconscionable

5    conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly

6    misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

7    increases.  Defendants, also, knowingly failed to disclose material information and important

8    facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled

9    District of Columbia Subclass members by creating the illusion of competitive pricing

10   controlled by market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively

11   concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy,

12   conducting meetings and conversations in secret, confining the plan to a small group of

13   high-level officials, and avoiding the creation of documents.

14         552.   Defendants engaged in deceptive and unconscionable conduct to secure

15   economic benefits from District of Columbia Subclass members.  District of Columbia Subclass

16   members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly

17   and illegally overcharged.  There was a gross disparity of bargaining power between the parties

18   with respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole

19   power to set that price and District of Columbia Subclass members had no power to negotiate.

20   Defendants' fraudulent actions, therefore, suppressed competition, which resulted in

21   unconscionably higher prices for purchasers and increased benefits for Defendants.

22         553.   District of Columbia Subclass members suffered an ascertainable loss of money

23   or property from the supracompetitive, artificially inflated prices.

24         554.   Defendants' conduct is a substantial factor of the District of Columbia Subclass'

25   loss.  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

26   District of Columbia Subclass members purchased Plasma-Derivative Protein Therapies at

27   supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

28   which Defendants created, that the price was a product of a free and fair market.

555.    Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of DC Code §§ 28-3901, *et seq.*, and District of Columbia Subclass members, accordingly, seek damages and injunctive relief pursuant to DC Code § 28-3905.

**C.    Violation of the Florida Deceptive & Unfair Trade Practices Act, F.S.A. §§ 501.201 et seq.**

556.    As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Florida Deceptive & Unfair Trade Practices Act, F.S.A. §§ 501.201 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Florida; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Florida State Subclass members were deprived of free and open competition; (4) Florida State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Florida State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

557.    Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases. Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled Florida State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                          110

558.     Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Florida State Subclass members.  Florida State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to set that price and Florida State Subclass members had no power to negotiate.  Defendants' fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants.

559.     Florida State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

560.     Defendants' conduct is a substantial factor of the Florida State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.  Florida State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

561.     Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Florida Deceptive & Unfair Trade Practices Act, F.S.A. §§ 501.201, *et seq.*, and Florida State Subclass members, accordingly, seek damages and injunctive relief pursuant to F.S.A. § 501.211.

**D.     Violation of Illinois Law, 815 ILCS 505/1 *et seq.***

562.     As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of 815 ILCS 505/1 *et seq.*  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Illinois; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Illinois State Subclass members were deprived of free and open competition; (4) Illinois State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                        111

1   product of a free and fair market; and (5) Illinois State Subclass members paid

2   supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

3        563.   Defendants knowingly and willfully engaged in deceptive and unconscionable

4   conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly

5   misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

6   increases.  Defendants, also, knowingly failed to disclose material information and important

7   facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled

8   Illinois State Subclass members by creating the illusion of competitive pricing controlled by

9   market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed

10   their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

11   meetings and conversations in secret, confining the plan to a small group of high-level officials,

12   and avoiding the creation of documents.

13        564.   Defendants engaged in deceptive and unconscionable conduct to secure

14   economic benefits from Illinois State Subclass members.  Illinois State Subclass members were

15   not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally

16   overcharged.  There was a gross disparity of bargaining power between the parties with respect

17   to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to set that

18   price and Illinois State Subclass members had no power to negotiate.  Defendants' fraudulent

19   actions, therefore, suppressed competition, which resulted in unconscionably higher prices for

20   purchasers and increased benefits for Defendants.

21        565.   Illinois State Subclass members suffered an ascertainable loss of money or

22   property from the supracompetitive, artificially inflated prices.

23        566.   Defendants' conduct is a substantial factor of the Illinois State Subclass' loss.

24   The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

25   Illinois State Subclass members purchased Plasma-Derivative Protein Therapies at

26   supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

27   which Defendants created, that the price was a product of a free and fair market.

28

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                112

567.   Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of 815 ILCS 505/1, *et seq.*, and Illinois State Subclass members, accordingly, seek damages and injunctive relief pursuant to 815 ILCS 505/10a.

**E.     Violation of the Kansas Consumer Protection Act, K.S.A. §§ 50-623 *et seq.***

568.   As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Kansas Consumer Protection Act, K.S.A. §§ 50-623, *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Kansas; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Kansas State Subclass members were deprived of free and open competition; (4) Kansas State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Kansas State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

569.   Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases. Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled Kansas State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

570.   Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Kansas State Subclass members. Kansas State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally

1  overcharged. There was a gross disparity of bargaining power between the parties with respect

2  to the price of Plasma-Derivative Protein Therapies. Defendants had the sole power to set that

3  price and Kansas State Subclass members had no power to negotiate. Defendants' fraudulent

4  actions, therefore, suppressed competition, which resulted in unconscionably higher prices for

5  purchasers and increased benefits for Defendants.

6      571.    Kansas State Subclass members suffered an ascertainable loss of money or

7  property from the supracompetitive, artificially inflated prices.

8      572.    Defendants' conduct is a substantial factor of the Kansas State Subclass' loss.

9  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

10  Kansas State Subclass members purchased Plasma-Derivative Protein Therapies at

11  supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

12  which Defendants created, that the price was a product of a free and fair market.

13      573.    Defendants engaged in unfair methods of competition or unconscionable, unfair,

14  or deceptive acts or practices in violation of the Kansas Consumer Protection Act, K.S.A. §§ 50-

15  623 *et seq.*, and Kansas State Subclass members, accordingly, seek damages and injunctive

16  relief pursuant to K.S.A. §§ 50-634.

17  **F.**    **Violation of the Kentucky Consumer Protection Act, KRS §§ 367.110 *et seq.***

18      574.    As set forth herein, Defendants engaged in unfair methods of competition or

19  unconscionable, unfair, or deceptive acts or practices in violation of the Kentucky Consumer

20  Protection Act, KRS §§ 367.110, *et seq.* Defendants' unlawful conduct had the following

21  effects: (1) the Plasma-Derivative Protein Therapies price competition and output were

22  restrained, suppressed, and eliminated throughout Kentucky; (2) the price of Plasma-Derivative

23  Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels

24  throughout Kentucky; (3) Kentucky State Subclass members were deprived of free and open

25  competition; (4) Kentucky State Subclass members relied on Defendants' false representation

26  that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market;

27  and (5) Kentucky State Subclass members paid supracompetitive, artificially inflated prices for

28  Plasma-Derivative Protein Therapies.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                        114

575.     Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases.  Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled Kentucky State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

576.     Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Kentucky State Subclass members.  Kentucky State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to set that price and Kentucky State Subclass members had no power to negotiate.  Defendants' fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants.

577.     Kentucky State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

578.     Defendants' conduct is a substantial factor of the Kentucky State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.  Kentucky State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

//

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                                 115

579. Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Kentucky Consumer Protection Act, KRS §§ 367.110 *et seq.*, and Kentucky State Subclass members, accordingly, seek damages and injunctive relief pursuant to KRS §§ 367.220.

**G.** **Violation of the Maine Unfair Trade Practices and Consumer Protection Law, M.R.S.A. §§ 205A *et seq.***

580. As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Maine Unfair Trade Practices and Consumer Protection Law, M.R.S.A. §§ 205A, *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Maine; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Maine State Subclass members were deprived of free and open competition; (4) Maine State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Maine State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

581. Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases. Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled Maine State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

582. Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Maine State Subclass members. Maine State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price of Plasma-Derivative Protein Therapies. Defendants had the sole power to set that price and Maine State Subclass members had no power to negotiate. Defendants' fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants.

583. Maine State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

584. Defendants' conduct is a substantial factor of the Maine State Subclass' loss. The loss was a direct and proximate result of Defendants' willful and deceptive conduct. Maine State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

585. Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Maine Unfair Trade Practices and Consumer Protection Law, M.R.S.A. §§ 205A *et seq.*, and Maine State Subclass members, accordingly, seek damages and injunctive relief pursuant to M.R.S.A. §§ 213.

**H.    Violation of the Maryland Consumer Protection Act, MD Code Com. Law §§ 13-301 *et seq.***

586. As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Maryland Consumer Protection Act, MD Code Com. Law §§ 13-301, *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Maryland; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Maryland; (3) Maryland State Subclass members were deprived of free

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

1  and open competition; (4) Maryland State Subclass members relied on Defendants' false

2  representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

3  fair market; and (5) Maryland State Subclass members paid supracompetitive, artificially

4  inflated prices for Plasma-Derivative Protein Therapies.

5    587.   Defendants knowingly and willfully engaged in deceptive and unconscionable

6  conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly

7  misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

8  increases.  Defendants, also, knowingly failed to disclose material information and important

9  facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled

10  Maryland State Subclass members by creating the illusion of competitive pricing controlled by

11  market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed

12  their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

13  meetings and conversations in secret, confining the plan to a small group of high-level officials,

14  and avoiding the creation of documents.

15    588.   Defendants engaged in deceptive and unconscionable conduct to secure

16  economic benefits from Maryland State Subclass members.  Maryland State Subclass members

17  were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and

18  illegally overcharged.  There was a gross disparity of bargaining power between the parties with

19  respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to

20  set that price and Maryland State Subclass members had no power to negotiate.  Defendants'

21  fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher

22  prices for purchasers and increased benefits for Defendants.

23    589.   Maryland State Subclass members suffered an ascertainable loss of money or

24  property from the supracompetitive, artificially inflated prices.

25    590.   Defendants' conduct is a substantial factor of the Maryland State Subclass' loss.

26  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

27  Maryland State Subclass members purchased Plasma-Derivative Protein Therapies at

28

**CLASS ACTION COMPLAINT**                                              118

1   supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

2   which Defendants created, that the price was a product of a free and fair market.

3       591.    Defendants engaged in unfair methods of competition or unconscionable, unfair,

4   or deceptive acts or practices in violation of the Maryland Consumer Protection Act, Md.Code

5   Com. Law §§ 13-301 *et seq*., and Maryland State Subclass members, accordingly, seek damages

6   pursuant to MD Code Com. Law § 13-408 and injunctive relief pursuant to MD Code Com.

7   Law § 13-407.

8   **I.      Violation of Massachusetts Law, M.G.L.A. 93A §§ 1 *et seq.*__**

9       592.    As set forth herein, Defendants engaged in unfair methods of competition or

10  unconscionable, unfair, or deceptive acts or practices in violation of M.G.L.A. 93A §§ 1 *et seq*.

11  Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein

12  Therapies price competition and output were restrained, suppressed, and eliminated throughout

13  Massachusetts; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed,

14  maintained, and stabilized at artificially high levels throughout Massachusetts; (3)

15  Massachusetts State Subclass members were deprived of free and open competition; (4)

16  Massachusetts State Subclass members relied on Defendants' false representation that the price

17  of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5)

18  Massachusetts State Subclass members paid supracompetitive, artificially inflated prices for

19  Plasma-Derivative Protein Therapies.

20      593.    Defendants knowingly and willfully engaged in deceptive and unconscionable

21  conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly

22  misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

23  increases. Defendants, also, knowingly failed to disclose material information and important

24  facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled

25  Massachusetts State Subclass members by creating the illusion of competitive pricing controlled

26  by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed

27  their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

28

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                                                    119

1   meetings and conversations in secret, confining the plan to a small group of high-level officials,

2   and avoiding the creation of documents.

3        594.   Defendants engaged in deceptive and unconscionable conduct to secure

4   economic benefits from Massachusetts State Subclass members. Massachusetts State Subclass

5   members were not aware of Defendants' price-fixing conspiracy or that they were being

6   unfairly and illegally overcharged. There was a gross disparity of bargaining power between the

7   parties with respect to the price of Plasma-Derivative Protein Therapies. Defendants had the

8   sole power to set that price and Massachusetts State Subclass members had no power to

9   negotiate. Defendants' fraudulent actions, therefore, suppressed competition, which resulted in

10   unconscionably higher prices for purchasers and increased benefits for Defendants.

11       595.   Massachusetts State Subclass members suffered an ascertainable loss of money

12   or property from the supracompetitive, artificially inflated prices.

13       596.   Defendants' conduct is a substantial factor of the Massachusetts State Subclass'

14   loss. The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

15   Massachusetts State Subclass members purchased Plasma-Derivative Protein Therapies at

16   supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

17   which Defendants created, that the price was a product of a free and fair market.

18       597.   Defendants engaged in unfair methods of competition or unconscionable, unfair,

19   or deceptive acts or practices in violation of M.G.L.A. 93A §§ 1 *et seq.*, and Massachusetts

20   State Subclass members, accordingly, seek damages and injunctive relief pursuant to M.G.L.A.

21   93A § 9.

22   **J.**     **Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§**

23         **445.901 *et seq.***

24       598.   As set forth herein, Defendants engaged in unfair methods of competition or

25   unconscionable, unfair, or deceptive acts or practices in violation of the Michigan Consumer

26   Protection Act, Mich. Comp. Laws Ann. §§ 445.901 *et seq.* Defendants' unlawful conduct had

27   the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output

28   were restrained, suppressed, and eliminated throughout Michigan; (2) the price of

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

1    Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially

2    high levels throughout Michigan; (3) Michigan State Subclass members were deprived of free

3    and open competition; (4) Michigan State Subclass members relied on Defendants' false

4    representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

5    fair market; and (5) Michigan State Subclass members paid supracompetitive, artificially

6    inflated prices for Plasma-Derivative Protein Therapies.

7         599.    Defendants knowingly and willfully engaged in deceptive and unconscionable

8    conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly

9    misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

10   increases.  Defendants, also, knowingly failed to disclose material information and important

11   facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled

12   Michigan State Subclass members by creating the illusion of competitive pricing controlled by

13   market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed

14   their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

15   meetings and conversations in secret, confining the plan to a small group of high-level officials,

16   and avoiding the creation of documents.

17        600.    Defendants engaged in deceptive and unconscionable conduct to secure

18   economic benefits from Michigan State Subclass members.  Michigan State Subclass members

19   were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and

20   illegally overcharged.  There was a gross disparity of bargaining power between the parties with

21   respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to

22   set that price and Michigan State Subclass members had no power to negotiate.  Defendants'

23   fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher

24   prices for purchasers and increased benefits for Defendants.

25        601.    Michigan State Subclass members suffered an ascertainable loss of money or

26   property from the supracompetitive, artificially inflated prices.

27

28

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY

**CLASS ACTION COMPLAINT**                                               121

602. Defendants' conduct a substantial factor of the Michigan State Subclass' loss. The loss was a direct and proximate result of Defendants' willful and deceptive conduct. Michigan State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

603. Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901 *et seq.*, and Michigan State Subclass members, accordingly, seek damages and injunctive relief pursuant to Mich. Comp. Laws Ann. § 445.911.

**K.** **Violation of the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601 *et seq.***

604. As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout Nebraska; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Nebraska State Subclass members were deprived of free and open competition; (4) Nebraska State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Nebraska State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

605. Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases. Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled Nebraska State Subclass members by creating the illusion of competitive pricing controlled by

1  market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed

2  their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

3  meetings and conversations in secret, confining the plan to a small group of high-level officials,

4  and avoiding the creation of documents.

5        606.    Defendants engaged in deceptive and unconscionable conduct to secure

6  economic benefits from Nebraska State Subclass members.  Nebraska State Subclass members

7  were  not aware of Defendants' price-fixing conspiracy or that they were being unfairly and

8  illegally overcharged.  There was a gross disparity of bargaining power between the parties with

9  respect to the price of Plasma-Derivative Protein Therapies.  Defendants had the sole power to

10  set that price and Nebraska State Subclass members had no power to negotiate.  Defendants'

11  fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher

12  prices for purchasers and increased benefits for Defendants.

13        607.    Nebraska State Subclass members suffered an ascertainable loss of money or

14  property from the supracompetitive, artificially inflated prices.

15        608.    Defendants' conduct is a substantial factor of the Nebraska State Subclass' loss.

16  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.

17  Nebraska State Subclass members purchased Plasma-Derivative Protein Therapies at

18  supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

19  which Defendants created, that the price was a product of a free and fair market.

20        609.    Defendants engaged in unfair methods of competition or unconscionable, unfair,

21  or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev.

22  St. §§ 59-1601 *et seq.*, and Nebraska State Subclass members, accordingly, seek damages and

23  injunctive relief pursuant to Neb. Rev. St. §§ 59-1609.

24  **L.**  **Violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et***

25      **seq.**

26        610.    As set forth herein, Defendants engaged in unfair methods of competition or

27  unconscionable, unfair, or deceptive acts or practices in violation of the New Mexico Unfair

28  Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et seq.*  Defendants' unlawful conduct had the

1  following effects: (1) the Plasma-Derivative Protein Therapies price competition and output

2  were restrained, suppressed, and eliminated throughout New Mexico; (2) the price of

3  Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially

4  high levels throughout New Mexico; (3) New Mexico State Subclass members were deprived of

5  free and open competition; (4) New Mexico State Subclass members relied on Defendants' false

6  representation that the price of Plasma-Derivative Protein Therapies was a product of a free and

7  fair market; and (5) New Mexico State Subclass members paid supracompetitive, artificially

8  inflated prices for Plasma-Derivative Protein Therapies.

9      611.   Defendants knowingly and willfully engaged in deceptive and unconscionable

10  conduct by creating a monopoly in a price-fixing conspiracy. Defendants knowingly

11  misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price

12  increases. Defendants, also, knowingly failed to disclose material information and important

13  facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled

14  New Mexico State Subclass members by creating the illusion of competitive pricing controlled

15  by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed

16  their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

17  meetings and conversations in secret, confining the plan to a small group of high-level officials,

18  and avoiding the creation of documents.

19      612.   Defendants engaged in deceptive and unconscionable conduct to secure

20  economic benefits from New Mexico State Subclass members. New Mexico State Subclass

21  members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly

22  and illegally overcharged. There was a gross disparity of bargaining power between the parties

23  with respect to the price of Plasma-Derivative Protein Therapies. Defendants had the sole

24  power to set that price and New Mexico State Subclass members had no power to negotiate.

25  Defendants' fraudulent actions, therefore, suppressed competition, which resulted in

26  unconscionably higher prices for purchasers and increased benefits for Defendants.

27      613.   New Mexico State Subclass members suffered an ascertainable loss of money or

28  property from the supracompetitive, artificially inflated prices.

**CLASS ACTION COMPLAINT**       124

614.    Defendants' conduct is a substantial factor of the New Mexico State Subclass' loss.  The loss was a direct and proximate result of Defendants' willful and deceptive conduct.  New Mexico State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive, artificially inflated prices because they reasonably relied on the false pretense, which Defendants created; that the price was a product of a free and fair market.

615.    Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et seq.*, and New Mexico State Subclass members, accordingly, seek damages and injunctive relief pursuant to N.M. Stat. Ann. § 57-12-10.

## M.    Violation of New York Law, N.Y. Gen. Bus. Law §§ 349 *et seq.*

616.    As set forth herein, Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 *et seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein Therapies price competition and output were restrained, suppressed, and eliminated throughout New York; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) New York State Subclass members were deprived of free and open competition; (4) New York State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) New York State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

617.    Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy.  Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases.  Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies.  Defendants knowingly misled New York State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy.  Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting

1  meetings and conversations in secret, confining the plan to a small group of high-level officials,

2  and avoiding the creation of documents.

3       618.    Defendants engaged in deceptive and unconscionable conduct to secure

4  economic benefits from New York State Subclass members. New York State Subclass

5  members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly

6  and illegally overcharged. There was a gross disparity of bargaining power between the parties

7  with respect to the price of Plasma-Derivative Protein Therapies. Defendants had the sole

8  power to set that price and New York State Subclass members had no power to negotiate.

9  Defendants' fraudulent actions, therefore, suppressed competition, which resulted in

10  unconscionably higher prices for purchasers and increased benefits for Defendants.

11       619.   New York State Subclass members suffered an ascertainable loss of money or

12  property from the supracompetitive, artificially inflated prices.

13       620.   Defendants' conduct is a substantial factor of the New York State Subclass' loss.

14  The loss was a direct and proximate result of Defendants' willful and deceptive conduct. New

15  York State Subclass members purchased Plasma-Derivative Protein Therapies at

16  supracompetitive, artificially inflated prices because they reasonably relied on the false pretense,

17  which Defendants created, that the price was a product of a free and fair market.

18       621.   Defendants engaged in unfair methods of competition or unconscionable, unfair,

19  or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 *et seq.*, and New York

20  State Subclass members, accordingly, seek damages and injunctive relief pursuant to N.Y. Gen.

21  Bus. Law § 349.

22  **N.**    **Violation of Utah Law, U.C.A. 1953 §§ 13-5-1 *et seq.***

23       622.   As set forth herein, Defendants engaged in unfair methods of competition or

24  unconscionable, unfair, or deceptive acts or practices in violation of U.C.A. 1953 §§ 13-5-1 *et*

25  *seq.* Defendants' unlawful conduct had the following effects: (1) the Plasma-Derivative Protein

26  Therapies price competition and output were restrained, suppressed, and eliminated throughout

27  Utah; (2) the price of Plasma-Derivative Protein Therapies was raised, fixed, maintained, and

28  stabilized at artificially high levels throughout Utah; (3) Utah State Subclass members were

deprived of free and open competition; (4) Utah State Subclass members relied on Defendants' false representation that the price of Plasma-Derivative Protein Therapies was a product of a free and fair market; and (5) Utah State Subclass members paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies.

623. Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy. Defendants knowingly misrepresented the quantities of Plasma-Derivative Protein Therapies and justifications for price increases. Defendants, also, knowingly failed to disclose material information and important facts regarding the cost of Plasma-Derivative Protein Therapies. Defendants knowingly misled Utah State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy. Defendants deceptively concealed their unlawful activities by agreeing not to divulge the existence of the conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents.

624. Defendants engaged in deceptive and unconscionable conduct to secure economic benefits from Utah State Subclass members. Utah State Subclass members were not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price of Plasma-Derivative Protein Therapies. Defendants had the sole power to set that price and Utah State Subclass members had no power to negotiate. Defendants' fraudulent actions, therefore, suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants.

625. Utah State Subclass members suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices.

626. Defendants' conduct is a substantial factor of the Utah State Subclass' loss. The loss was a direct and proximate result of Defendants' willful and deceptive conduct. Utah State Subclass members purchased Plasma-Derivative Protein Therapies at supracompetitive,

artificially inflated prices because they reasonably relied on the false pretense, which Defendants created, that the price was a product of a free and fair market.

627. Defendants engaged in unfair methods of competition or unconscionable, unfair, or deceptive acts or practices in violation of U.C.A. 1953 §§ 13-5-1 *et seq.*, and Utah State Subclass members, accordingly, seek damages and injunctive relief pursuant to U.C.A. 1953 § 13-5-14.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A. That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

B. That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have violated the Antitrust and Unfair Competition Laws

C. That judgment be entered for Plaintiff and Class members against Defendants for damages sustained by Plaintiff and the Class and/or restitution as allowed by law.

D. That Plaintiff and the Class recover pre-judgment and post-judgment interest as permitted by law.

E. That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law.

F. That Defendants be enjoined from continuing their participation in the alleged conspiracy.

G. For such other and further relief as is just and proper under the circumstances.

DATED: December , 2010

COTCHETT, PITRE & McCARTHY

By:
Stuart G. Gross
*Attorneys for Plaintiff County of San Mateo
and Putative Class*

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY

**CLASS ACTION COMPLAINT**

128

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED: Decemeber 14, 2010

COTCHETT, PITRE & McCARTHY

By:
     Stuart G. Gross
*Attorneys for Plaintiff County of San Mateo and Putative Class*

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY